IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEBRA S. LEEDY,                                      05-CV-433-BR

       Plaintiff,                              OPINION AND ORDER

v.

JO ANNE B. BARNHART,
Commissioner of Social
Security,

       Defendant.


JAMES S. COON
SWANSON, THOMAS & COON
820 SW Second Ave., Suite 200
Portland, OR  97204
(503) 228-5222

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024


1  -  OPINION AND ORDER

**MICHAEL MCGAUGHRAN**
Office of the General Counsel
**TERRYE E. SHEA**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2143

   Attorneys for Defendant

**BROWN, Judge.**

  Plaintiff Debra S. Leedy brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) denying her application for Disability Insurance Benefits under Title II of the Social Security Act.  Leedy seeks an order reversing the decision of the Commissioner and remanding for payment of benefits for the closed period of August 1999 through July 2003.  The Commissioner contends the decision is based on substantial evidence and free from legal error.  The Commissioner, therefore, requests the Court affirm his decision.

  Following a thorough and careful review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

  Leedy filed an application for disability insurance benefits on January 29, 2002, alleging disability as of August 20, 1999,

2  -  OPINION AND ORDER

based on a diagnosis of post-traumatic stress disorder (PTSD), depression, anxiety, irritable bowel syndrome, insomnia, headaches, and confused thinking.  Tr. 94-115.[1]  The application was denied on June 19, 2002, and on reconsideration on November 7, 2002.  Tr. 71, 80.  An Administrative Law Judge (ALJ) held a hearing on July 12, 2004.  Leedy was represented by counsel.  Tr. 22.  At the hearing, Leedy; Leedy's husband, Steven; and a vocational expert (VE) testified.  Tr. 22-69.

The ALJ issued a decision on October 4, 2004, in which she found Leedy was not disabled within the meaning of the Social Security Act.  Tr. 12-21.  That decision became the final decision of the Commissioner on February 11, 2005, when the Appeals Council denied Leedy's request for review.  Tr. 5.

## BACKGROUND

### I.   General

Leedy was 43 years old at the time of the hearing.  Tr. 19, 70.  She has a high-school education, and her past work experience includes employment as house cleaner, store owner, legal secretary, legal assistant, and general office clerk.

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of record filed with the Commissioner's Answer.

3  -  OPINION AND ORDER

Tr. 142. Leedy seeks Social Security benefits for a closed period of August 1999 through July 2003. Tr. 26.

## II. Medical Evidence

Except when noted below, Leedy does not challenge the ALJ's summary of the medical evidence. After carefully reviewing the record, the Court adopts the ALJ's summary of the medical evidence. Tr. 12-21.

Leedy was seen for eleven psychotherapy sessions at the Willamette Valley Family Center from June 20, 1996, through January 8, 1997, because of anxiety, depression, and a stressful work situation. Tr. 361.

On December 28, 1999, Eugene W. Minard, M.D., M.P.H., interviewed Leedy and reviewed the medical record of Dr. Douglass Johnson, M.D., Leedy's treating physician. Dr. Minard diagnosed Leedy as having an "occupational problem due to unusual chronic work stress manifested by impaired concentration and memory with feelings of confusion." Tr. 208-09. Dr. Minard recommended Leedy "[d]iscontinue stressful job. Get job that involves normal working hours and work load. No medications necessary for depression or anxiety." Tr. 208-09.

On April 18, 2000, Richard M. Kolbell, Ph.D., provided a psychodiagnostic evaluation of Leedy pursuant to Dr. Johnson's request. Dr. Kolbell noted Leedy is up around 10:00 a.m. on a typical day, makes coffee, showers, and dresses. She then cleans

4 - OPINION AND ORDER

the house, runs errands, works on crafts, or watches television. She is able to provide meals for her family and is otherwise independent in all basic and advanced activities of daily living. Leedy did not report any significant symptoms suggestive of prominent mood disorder, anxiety, or severe psychotic spectrum disorders. Dr. Kolbell opined, "It is not clear to me the basis on which Dr. Johnson makes a determination that Leedy is disabled from working based on psychiatric conditions, as I find no evidence of this." Tr. 223-27.

On May 12, 2000, Leedy saw Sally Hingley, LCSW, who referred Leedy to a stress-management group. On August 25, 2000, however, Hingley noted Leedy only went to the stress-management group twice, had one individual session, and then failed to follow up. Tr. 242-45.

Four separate DDS[2] physician assessments of Leedy beginning on May 3, 2000, through November 5, 2002, were consistent in their findings. They all noted Leedy did not have any significant emotional or mental limitations or any RFC restriction that would preclude her from work. Furthermore, the limitations they found did not establish the presence of the "C" criteria. Tr. 228-40, 252-68, 362-79, 430-41.

---

[2] DDS is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 321(1) and 20 C.F.R. § 416.903.

5 - OPINION AND ORDER

### A. Dr. Johnson

On August 26, 1999, Dr. Johnson advised the State of Oregon Employment Department that Leedy was unable to work for approximately one week in April 1999 due to anxiety and depression. Dr. Johnson explained Leedy was able to resume full-time work following her week off with the only restriction being not to return to her job at the law office. Tr. 222, 350. On December 29, 1999, Dr. Johnson again advised the State of Oregon Employment Department that Leedy was suffering from anxiety arising from stress at the workplace. Although Leedy was unable to work on December 27, 1999, Dr. Johnson concluded Leedy could resume other nonlegal, secretarial, full-time employment on December 28, 1999. Tr. 221, 359.

In a March 6, 2000, letter, Dr. Johnson stated Leedy had physical and emotional symptoms of an adjustment disorder that was probably related to on-the-job stress. Dr. Johnson explained Leedy was unable to do legal assistant/secretarial work, and she was likely to be permanently disabled if she continued that type of work. Tr. 320.

On August 21, 2000, Dr. Johnson wrote a letter to the DDS in which he opined Leedy was "in no way ready to deal with a job where she had to perform during certain hours and at a certain level." Tr. 246-47.

On March 11, 2002, Dr. Johnson wrote a letter to the DDS in which he opined Leedy was not able to engage in a productive work experience because of her difficulty with concentration and attention as well as continued pain in her neck.  Tr. 319.

**B.   Dr. Stallone**

On March 20, 2002, Dr. Thomas M. Stallone, Psy.D., P.C., provided his diagnostic impression and treatment summary of Leedy to the DDS.  His diagnosis included PTSD, anxiety disorder, NOS with obsessive compulsive and somaticizing features, and occupational problems.  Tr. 399-401.

On August 30, 2002, Dr. Stallone explains in a status report that Leedy is slowly trying to get back into the workforce part-time.  Tr. 396-98.

On July 2, 2004, Dr. Stallone wrote a letter to Leedy's attorney in which he stated Leedy, "would have been unable to cope" at the beginning of treatment "with even minimal performance expectations, within any kind of work environment, because expectations would have increased her anxiety to the point she would be unable to function."  Tr. 536-37.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996).  To meet this

7  -   OPINION AND ORDER

burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

     The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

     The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld even if the "evidence is

8   -   OPINION AND ORDER

susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40. The court may not substitute its judgment for that of the Commissioner. *Batson,* 359 F.3d at 1193.

## DISABILITY ANALYSIS

### I. The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). *See also* 20 C.F.R. § 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Yuckert*, 482 U.S. at 140. *See also* 20 C.F.R. § 416.920(b).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant has no "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(c).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41. *See also* 20 C.F.R. § 416.920(d).

9  -   OPINION AND ORDER

The criteria for the listed impairments known as Listings are enumerated in 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite her limitations. 20 C.F.R. § 416.945(a). *See also* Social Security Ruling (SSR) 96-8p.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e).

If the Commissioner reaches Step Five, she must determine whether the claimant is able to do any other work that exists in the national economy. *Yuckert*, 482 U.S. at 141-42. *See also* 20 C.F.R. § 416.920(e),(f). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Yuckert*, 482 U.S. at 141-42. *See also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets

this burden, the claimant is not disabled.  20 C.F.R. § 416.920(f)(1).

## II.  ALJ's Findings

At Step One, the ALJ found Leedy had not been engaged in substantial gainful activity since her alleged onset date. Tr. 13.

At Step Two, the ALJ found Leedy's anxiety disorders and history of cervical and lumbar spine disc herniation with back pain were severe impairments within the meaning of the Regulations.  Tr. 13.

At Step Three, the ALJ found Leedy's severe impairments were not severe enough to meet or to medically equal, either singly or in combination, one of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  Tr. 13.  The ALJ found Leedy did not have any limitations in daily activities; mild limitations in social functioning; and mild limitations in concentration, persistence, or pace.  Tr. 13-14.  Pursuant to the DDS reports and the evidence presented, the ALJ held the evidence did not establish the presence of the "C" criteria.  Tr. 13-14.

At Step Four, the ALJ found Leedy was unable to perform her past relevant work because that work was in high-stress occupations.  TR. 18.

At Step Five, the ALJ found Leedy retained the RFC to perform a significant range of unskilled sedentary work or work

11 -   OPINION AND ORDER

performed in a low-stress environment. Tr. 18. The ALJ also found neither the objective medical evidence nor Leedy's testimony established that Leedy's ability to function was severely impaired to a degree that precluded all types of work activities. Tr. 18-19. Pursuant to the VE's testimony and the record, the ALJ concluded Leedy had the RFC as well as the vocational and educational background to perform other work existing in the national and Oregon/Washington economy such as a scanner, a production/assembly worker, and a light assembler. Tr. 19.

## DISCUSSION

Leedy contends the ALJ's decision should be reversed on the grounds that the ALJ: 1) ignored medical opinions, specifically Dr. Johnson's opinion that Plaintiff could not do any job at which she would have to "perform during certain hours and at a certain level" and Dr. Stallone's opinion that Plaintiff would have been "unable to cope with even minimal performance expectations, within any kind of work environment"; 2) failed to give specific reasons for finding that Plaintiff's testimony was not fully credible; and 3) posed hypothetical questions to the VE that omitted Leedy's nonexertional limitations.

12 -   OPINION AND ORDER

I.  **Opinions of Drs. Johnson and Stallone**

Leedy contends the ALJ erred because he ignored Dr. Johnson's opinion that Plaintiff could not do any job at which Leedy would have to "perform during certain hours and at a certain level."  Leedy also asserts the ALJ erred because he ignored Dr. Stallone's opinion that Plaintiff would have been "unable to cope with even minimal performance expectations, within any kind of work environment."

It is well-settled that "greater weight is afforded to the opinion of a treating physician than to that of [a] non-treating physician, because the treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual."  *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir. 1993)(internal quotations omitted).  A treating physician's opinion is controlling when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record.  20 C.F.R. § 404.1527(d)(2).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "specific, legitimate reasons" for rejecting it if that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  When the opinion of the treating physician or other medical expert is uncontroverted,

13 -   OPINION AND ORDER

the ALJ must give "clear and convincing reasons" before rejecting such an opinion.  *Id*.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  The ALJ also must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ may properly reject a physician's opinion regarding disability when it is premised on the claimant's own subjective complaint of disabling pain that the ALJ already has discounted.  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

     As noted, Dr. Johnson, one of Leedy's treating physicians, opined in August 1999, December 1999, and March 2000 that Leedy could perform work other than in the legal profession.  The August 2000 and March 2002 letters from Dr. Johnson to the DDS in which Dr. Johnson opines Leedy was not "ready to deal with a job where she had to perform during certain hours and at a certain level" are, however, in direct contradiction to Dr. Johnson's earlier opinions without any explanation for the change.  In summary, the ALJ's findings are consistent with Dr. Johnson's earlier opinions and other treating physicians as to Leedy's ability to perform work other than in the legal field.

     In a July 2004 letter to Leedy's counsel, Dr. Stallone, one of Leedy's treating physicians, opined Leedy would have been

14 -   OPINION AND ORDER

the ALJ must give "clear and convincing reasons" before rejecting such an opinion.  *Id*.  *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9th Cir. 1995).  The ALJ also must give "specific, legitimate reasons" for rejecting the opinion of an examining physician when that opinion conflicts with another physician's opinion or with evidence in the record.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The ALJ may properly reject a physician's opinion regarding disability when it is premised on the claimant's own subjective complaint of disabling pain that the ALJ already has discounted.  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

     As noted, Dr. Johnson, one of Leedy's treating physicians, opined in August 1999, December 1999, and March 2000 that Leedy could perform work other than in the legal profession.  The August 2000 and March 2002 letters from Dr. Johnson to the DDS in which Dr. Johnson opines Leedy was not "ready to deal with a job where she had to perform during certain hours and at a certain level" are, however, in direct contradiction to Dr. Johnson's earlier opinions without any explanation for the change.  In summary, the ALJ's findings are consistent with Dr. Johnson's earlier opinions and other treating physicians as to Leedy's ability to perform work other than in the legal field.

     In a July 2004 letter to Leedy's counsel, Dr. Stallone, one of Leedy's treating physicians, opined Leedy would have been

unable to cope with even minimal work-performance expectations at the time she began therapy.  This opinion, however, is in direct contradiction to the opinions of Leedy's other treating physicians.  In addition, the ALJ properly considered Dr. Stallone's opinion in conjunction with the rest of Leedy's medical record when he acknowledged Leedy had anxiety disorders.  The ALJ found, however, the weight of the evidence reflected Leedy was able to perform a full range of work in a low-stress environment.  Tr. 18.

On this record, therefore, the Court concludes the ALJ did not err when he rejected and/or discounted the opinions of Drs. Johnson and Stallone because the ALJ provided legally sufficient reasons supported by the record for doing so.

## II.  **Leedy's Testimony**

Leedy contends the ALJ erred because he failed to give any specific reasons for finding Plaintiff's testimony not fully credible.

"If the ALJ finds that the claimant's testimony as to the severity of [the claimant's] pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit claimant's testimony."  *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002).  When weighing the claimant's credibility, the ALJ may consider "inconsistencies

15 -   OPINION AND ORDER

either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas,* 278 F.3d at 958.

The ALJ identified several inconsistencies between Leedy's testimony and the medical record.  As a result, the ALJ found Leedy's testimony not credible regarding her reports that she is limited as to the full range of sedentary unskilled and low-stress work that she can perform.  Tr. 18.

The ALJ found Leedy to be credible generally as to "a history of anxiety disorders and a history of cervical and lumbar spine disc herniation with back pain." Tr. 18.  The medical records, however, reflect numerous doctors who found Leedy could have worked through her closed period in a position other than legal secretary/assistant.  The ALJ's conclusion as to the credibility of Leedy's testimony, therefore, is supported by evidence in the record.

In summary, the Court finds the ALJ adequately explained his reasons for finding Leedy not credible as to the intensity, persistence, and limiting effects of her conditions.  The Court,

16 -   OPINION AND ORDER

therefore, concludes the ALJ did not err because he provided a legally sufficient basis supported by the record for rejecting portions of Plaintiff's testimony.

### III. **Hypothetical Questions to the VE**

Leedy contends the ALJ erred because his hypothetical questions to the VE completely omitted Leedy's nonexertional limitations.

The Commissioner must show the claimant can do other work that exists in the national economy in order to satisfy Step Five of the analysis. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The Commissioner can satisfy this burden by eliciting the testimony of a VE with a hypothetical question that sets forth all of the claimant's limitations. *Id.* The assumptions in the hypothetical question must be supported by substantial evidence in the record. *Id*.

Leedy asserts the ALJ's hypothetical questions did not include limitations concerning her mental capacity. The ALJ provided several hypotheticals to the VE that accurately reflected the findings in the ALJ's RFC assessment. Even though the ALJ found Leedy did not have any credible nonexertional limitations, one of his hypotheticals to the VE included the nonexertional emotional/mental limitations reported by Leedy. Tr. 65-66. In response to the ALJ's hypothetical concerning nonexertional limitations, the VE opined Leedy would not be able

17 -   OPINION AND ORDER

to perform any work in a competitive environment if she actually had thos nonexertional limitations. Tr. 65-66. As summarized in the ALJ's opinion, however, Leedy's medical record is replete with evidence that her nonexertional emotional problems would limit her employment only in the legal field.

Accordingly, the Court concludes the ALJ did not err in his proposed hypothetical questions to the VE because those questions accurately reflected all of Leedy's functional limitations and were reasonably supported by the record.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the Commissioner's decision and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 8th day of May, 2006.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

18 -   OPINION AND ORDER